UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JOHN LINDEN,

    Plaintiff

8:08-CV-0150-17-17BM

v.

KOWABUNGA, INC.,
and STAN ANTONUK individually
and in his official capacity.

_____ Defendants _____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

John Linden, through undersigned counsel, states by way of complaint against defendants:

1. This Court has jurisdiction over plaintiff's claims pursuant to Title 28 U.S.C. Section 1331 and 1343 (3) and (4) in that this is an action arising out of the laws of the United States, namely the Equal Pay Act and the Computer Fraud and Abuse Act. This court also has ancillary jurisdiction over the other claims under the doctrine of pendent jurisdiction

2. John Linden is a resident of Pinellas County, Florida.

3. Kowabunga, Inc. is a Nevada corporation with its principal place of business in Pinellas County, Florida.

4. Stan Antonuk is a resident of Pinellas County, Florida.

5. Venue is proper in Pinellas County because that is where the parties are located and the cause of action arose.

6. Prior to 2006, Linden was a significant shareholder of Litmus Media, Inc., a Missouri corporation.

1

7. In 2006, pursuant to a contract of sale/merger, the shares of Litmus Media Inc. were purchased by CGI Holding Corporation, a predecessor of Kowabunga, Inc. This will hereafter be referred to as the Litmus Purchase. Kowabunga, Inc. and its predecessors shall hereafter be referred to collectively as "KB".

8. In connection with the sale/merger, Linden and KB entered into an Employment Agreement, copy attached as Exhibit A. Plaintiff thereafter was employed as the Co-President of Litmus Media, Inc. in Missouri.

9. In June 2006, plaintiff was named the Chief Technology Officer of defendant.

10. On July 21, 2006, the parties amended the Employment Agreement, whereby Linden was to report directly to Scott Mitchell, the President and CEO of the defendant. A copy of the Amendment is attached as Exhibit B.

11. In April 2007, KB offered, and plaintiff accepted, a new compensation package contingent on plaintiff relocating to KB's headquarters in Pinellas County, Florida.

12. In May and June 2007, Linden and his family entered into a long-term lease of their home in Missouri and purchased a new home in Palm Harbor, Florida in reliance on the company's assurances of continued employment.

13. On April 24, 2008, Scott Mitchell resigned as President and CEO of KB and Stan Antonuk was named the interim President and CEO.

14. In March 2008, KB, through its then Chief Operating Officer defendant Stan Antonuk,began to usurp and undermine plaintiff's authority by having his direct report spend a week reviewing operations at the company's Utah offices without plaintiff's input or permission.

15. In early April 2008, before CEO Scott Mitchell's resignation, Antonuk excluded plaintiff from a memo distributed to other officers of the Company about Mitchell's possible resignation.

16. On April 7, 2008 plaintiff wrote to the KB Board of Directors and to Antonuk about the above as examples of breaches of his Employment Agreement with KB. A copy of that letter is attached as Exhibit C.

17. At the same time, plaintiff's wife, Melissa Linden, then a Division Director of KB, was complaining to the Company about a pay disparity between Director level male employees and female employees and the Company's failure to pay her a previously-awarded $15,000 bonus. Plaintiff publicly supported his wife's position in the dispute.

18. In May 2008, KB and Melissa Linden entered into a settlement agreement resolving their disputes.

19. From April through July, 2008 the Company, through its senior management and Board of Directors, had continued discussions with plaintiff about retaining him as CTO and about his future compensation as well as compensation or "earnout" due to him from the Litmus Purchase. In an effort to retain Linden the Company agreed that Linden would be awarded 300,000 Restricted Stock Units ("RSU's") and 500,000 stock options. On June 23, 2008, Antonuk signed the Restricted Stock Option Agreement on behalf of the Company, copy attached as Exhibit D.

20. On July 16, 2007, in an e mail plaintiff agreed to all of Antonuk's changes on the Stock Options Agreement and asked for new copies to be sent for execution of the updated agreements.

3

21. On or about July 17, 2008, plaintiff was not able to travel to the office because of a personal issue and hence worked away from the office as he did on a regular basis.

22. On or about July 22nd, the Company advised plaintiff that he would be docked a day's pay because he was not at work on July 17th, would not be granted the RSU's or stock options, and would not pay plaintiff his second quarter bonus despite that plaintiff had fulfilled his goals.

23. On July 23, 2008, plaintiff wrote to the Kowabunga Board regarding breaches of his Employment Agreement that occurred since his April 2007 correspondence to the Board. A copy of the e-mail letter is attached as Exhibit E.

24. While he was a major shareholder at Litmus Media, Inc. and well before the Litmus Purchase, Linden had maintained an account at Godaddy containing various domain names and related information, both concerning Litmus and himself and his family personally, including personal credit card and bank information. One of the projects Linden had been working on in 2008 was to transfer the Litmus-related domain names and information to a different Godaddy account but had not accomplished this transfer prior to July 23, 2008. However, at all times, the business as opposed to personal domain names were always handled separately.

25. On July 23, 2008, just hours after plaintiff had e-mailed Mitchell Tuchman about continuing breaches of Linden's Employment Agreement, KB Secretary and General Counsel Vaughn Duff e-mailed Linden requesting that Linden contact KB employee Rick Anderson to advise Anderson of the password for the personal Godaddy account so that KB could access certain KB related domain name information.

4

26. Before Linden could respond, defendant, through its employees, contacted Godaddy. Pretending to be Linden, the company, through its employees, obtained Linden's passcode to access the aforementioned Godaddy account changing the passcode and e-mail address to lock him out of the account.

27. On July 24, 2008, Linden, while still on his European vacation, received by e-mail a letter from Antonuk advising Linden that his Employment Agreement was terminated under the "for cause" provision of the Agreement. A copy of the Agreement is attached as Exhibit **F**.

28. On July 25, 2008, KB wrote to OpenX stating that KB had reason to believe that plaintiff was applying for employment there and that KB intended to enforce its non-compete against Linden and OpenX if Linden accepted employment with OpenX.

29. In fact, KB had no legitimate reason to write to OpenX because the Employment Agreement between Linden and KB does not prohibit Linden from being employed by OpenX.

30. The Employment Agreement between Linden and KB prohibits Linden from being employed, during the two years subsequent to the termination of his employment, with a Company that "directly" competes with KB. OpenX does not directly compete with KB and indeed KB's business is related to performance-based (cost-per-action and cost-per-click) advertising solutions focusing primarily in the elimination of fraudulent clicks while OpenX's business is related to an open-source ad serving solution that gives web publishers control over their own online advertising.

31. On July 30, 2008, KB filed a form 8K with the SEC stating that KB had terminated Linden "for cause" as discussed above and that KB had commenced "a legal action in

Florida state circuit court Pinellas County, Florida, seeking a declaratory judgment to recover access to and control of internet domain names believed to be the property of the Company." However, the 8K (Exhibit G) failed to allege that Linden had already offered to take all steps necessary to transfer the names that were the property of KB to KB.

32. On information and belief, Linden's "for cause" termination was based in part on the domain name issue discussed above; however, Linden was singled out and disparately treated for maintaining KB owned names in the Godaddy account.

33. In fact, KB's domain name assets are registered and frequently held in accounts maintained by employees and even **former** employees. For example, the following KB domain names are held by employees: babytobee.com, and jumptoyourcity.com while kowabunga.com, the main home page on the Company's website, is registered with former employee Todd Farmer. See copies of WHOIS information for these domain names attached collectively as Exhibit **H**.

34. In contrast, the domain name validclick.com, which relates to KB's validclick related businesses (now touted as one of the Company's chief areas of growth) and which was in plaintiff's Godaddy account, has never been registered to plaintiff. See copy of WHOIS information for validclick.com attached as Exhibit **I**.

35. Plaintiff at all times relevant herein performed his duties under the Employment Agreement in a satisfactory manner and indeed, at the very time Linden was being terminated, Antonuk was advising KB employees that projects under Linden's supervision were going well.

36. On information and belief, Antonuk has at least since the departure of former CEO Mitchell harbored personal animosity against plaintiff because there was sentiment as set

6

forth on blogs on the internet indicating that Linden should have become CEO of KB upon Mitchell's departure and because of Melissa Linden's grievances.

37. Antonuk's directions to subordinates to pretend to be Linden to obtain the Godaddy account and to access Linden's personal information in that account and to contact the CEO of OpenX was done with malice.

38. All conditions precedent to this suit have been satisfied.

## COUNT ONE

## BREACH OF EMPLOYMENT AGREEMENT AGAINST KB ONLY

39. Plaintiff restates the allegations of paragraphs 1 through 38 as if set forth at length herein.

40. Plaintiff was wrongfully discharged from employment in breach of his Employment Agreement with the defendant. as there was no "cause" for his discharge.

41. By virtue of said breach, plaintiff has been damaged.

WHEREFORE, plaintiff requests this Court enter a judgment against defendant for damages, costs, interest, attorney's fees, and such other relief as the Court deems proper.

## COUNT TWO

## RETALIATION UNDER EQUAL PAY ACT AGAINST KB AND ANTONUK

42. Plaintiff restates the allegations of paragraphs 1 through 38 as if set forth at length herein.

43. Melissa Linden's complaints to the Company were complaints for compensation discrimination in violation of the Equal Pay Act.

44. The termination of John Linden was motivated in substantial part by the Company's intent to retaliate against Melissa Linden via her husband for Mrs. Linden's Equal Pay

Act complaint and to retaliate against John Linden individually for supporting his wife's complaint.

45. Antonuk's decision to terminate Linden was based in substantial part on Linden's opposition to his wife's compensation grievance.

46. By virtue of the defendants' retaliation, plaintiff has been damaged.

WHEREFORE, plaintiff requests this Court enter a judgment against defendants for damages, costs, interest, attorney's fees, and such other relief as the Court deems proper.

## COUNT III

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT AGAINST KB AND ANTONUK

47. Plaintiff restates the allegations of paragraphs 1 through 38 as if set forth at length herein.

48. The Company's ploy of pretending to be John Linden to Godaddy in order to obtain Linden's passcode to the Godaddy account was done without Linden's knowledge and consent.

49. The Godaddy account was a "protected computer" as that term is used in the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. Section 1030 et seq.

50. KB, through its employees, with intent to defraud and knowing it did not have plaintiff's authorization to do so, defrauded Godaddy to obtain Linden's password.

51. By virtue of the above conduct, KB obtained Linden's personal information that had value as well as Litmus-related information that had value other than use of the "protected computer" itself, and otherwise damaged Linden and his family.

52. Antonuk directed his subordinates to pretend to be Linden in order to obtain the password to the Godaddy account.

53. Because of the Company's unauthorized access to the Godaddy "protected computer" at Antonuk's direction, KB and Antonuk are liable to plaintiff under the CFAA for damages and losses.

WHEREFORE, plaintiff request the Court enter a judgment against defendants for damages, costs, attorneys fees, and such other relief as the Court deems proper.

## COUNT IV

### TRESPASS AGAINST KB AND ANTONUK

54. Plaintiff restates the allegations of paragraphs 1 through 38 as if set forth at length herein.

55. John Linden never provided KB authorization to access Linden's personal domain name and credit card and bank account information.

56. Even if the company had a good reason to pretend to be Linden to obtain his password and to access the KB related information, the company exceeded the bounds of such reason by accessing Linden's personal information.

57. Defendant Antonuk personally directed his subordinates to pretend to be Linden in order to access the password.

58. By his actions Linden is personally liable for trespass.

59. By virtue of the defendants' access of Linden's personal information, the defendants have the tort of trespass against Linden.

60. By virtue of said trespass, Linden has been damaged.

WHEREFORE, plaintiff demands the Court enter a judgment against defendants for damages, costs, interest and such other relief as the Court deems proper.

**COUNT V**

**BREACH OF AGREEMENT TO PAY SECOND QUARTER BONUS AND TO AWARD 300,000 RSU'S AGAINST KB ONLY**

61. Plaintiff restates the allegations of paragraphs 1 through 38 as if set forth at length herein.

62. Despite demand by Linden, defendant has refused to pay Linden his second quarter bonus and 300,000 RSU's.

63. Linden has fulfilled all conditions to, and is entitled to, the compensation set forth in the preceding paragraph.

64. By virtue of the failure to pay said compensation, Linden has been damaged.

WHEREFORE, plaintiff requests the Court enter judgment against defendant for damages, costs, interest and such other relief as the Court deems proper.

**COUNT VI**

**PROMISSORY ESTOPPEL AGAINST KB ONLY**

65. Plaintiff repeats the allegations of paragraphs 1 through 38 as if set forth at length herein.

66. The Company through its former CEO promised plaintiff that the company had great prospects and that he would enjoy continued employment with the Company if he would relocate to Florida from Missouri.

67. Mitchell intended to, and did in fact, induce Linden to relocate from Missouri to Florida by Mitchell's promise of continued employment.

68. Because of Mitchell's assurances, plaintiff entered into a long-term lease of his house in Missouri and purchased a home in Florida at the top of the real estate "bubble" and where the

cost of living was greater than Missouri, and as a result plaintiff's home is worth far less than when in purchased it in 2007.

69. Plaintiff detrimentally relied on the Company's promises of continued employment. It would be unjust if the Company's promise, made through its former CEO, is not enforced.

WHEREFORE, plaintiff requests the court enter judgment against defendant for damages, costs, interest, and such other relief as the Court deems proper.

## COUNT VII

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ANTONUK AND KB

70. Plaintiff repeats the allegations of paragraphs 1 through 36 as if set forth at length herein.

71. As of July 25, 2008, the Plaintiff maintained a good business relationship with OpenX and was negotiating for employment with them.

72. KB has indicated, through contact with the CEO of OpenX, that they knew the plaintiff had an advantageous business relationship with OpenX.

73. KB, through its employees, intentionally interfered with the aforesaid relationship. Antonuk personally directed that the letter be sent to the CEO of OpenX.

74. Antonuk's actions were done with malice.

75. By virtue of Antonuk's and KB's intentional and unjustified interference, plaintiff has been damaged.

WHEREFORE plaintiff requests the Court enter a judgment against defendants for damages, costs, interest, and such other relief as the Court deems proper.

## COUNT VIII

## DEFAMATION AGAINST KB AND ANTONUK

76. Plaintiff repeats the allegations of paragraphs 1 through 37 as if set forth at length herein.

77.Antonuk caused to be publish the statements in the 8K regarding Linden's termination "for cause" knowing 1)that the statement that there was cause for termination was false and 2)that Linden would have to repeat the accusation that he had been terminated for cause in communications with prospective employers and others.

78.Antonuk's actions were done with malice.

79.By virtue of Antonuk's actions, for which KB is also liable, Linden has been damaged.

WHEREFORE, plaintiff demands the Court enter judgment against defendants for damages, costs, interest and such other relief as the Court deems proper.

## COUNT IX

### REPLEVIN AGAINST KB

80.Plaintiff repeats the allegations of paragraphs 1 through 38 as if set forth at length herein.

81. KB is in possession of Linden's personal property including but not limited to his Kansas University memorabilia and personally owned computer equipment and refuses to return said property to him.

82. By virtue of KB's actions, plaintiff has been damaged.

WHEREFORE, plaintiff demands the Court issue a writ of replevin for the return of plaintiff's property.

## COUNT X

### CONVERSION AGAINST KB ONLY

83.Plaintiff repeats the allegations of paragraphs 1 through 38 as if set forth at length herein.

84. KB has permanently deprived and converted Linden's personal property including but not limited to his Kansas University memorabilia and personally owned computer equipment and refuses to return said property to him.

85. By virtue of KB's actions, plaintiff has been damaged.

WHEREFORE, plaintiff requests the Court enter a judgment for damages, costs, interest and such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Linden demands a trial by jury on all claims so triable.

Nicholas J. Taldone, Esquire
2536 Countryside Blvd.
Suite 100 East
Clearwater, FL 33763
Phone: (727) 712-1400
Fax:    (727) 725-3689
FBN 102598